IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MICHAEL GORDON, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | CIVIL ACTION NO. 14-211-KD-B |
| BRANDON CULPEPPER, in his individual ) | |
| capacity, and CITY OF SELMA, ) | |
| ALABAMA, a municipal corporation, ) | |
| Defendants. ) | |

**ORDER**

This matter is before the Court on Defendants' motion for summary judgment (Docs. 19-20), Plaintiff's response (Doc. 25), and the Defendants' reply. (Doc. 26). For the reasons discussed herein, the motion is **GRANTED** on all claims.

**I.    Procedural History**

On May 8, 2014, Plaintiff Michael Gordon ("Gordon") commenced this action by filing suit against Officer Brandon Culpepper ("Officer Culpepper")[1] and the City of Selma ("the City"). On June 5, 2014, the Defendants answered the complaint. On February 20, 2015, the Defendants timely filed this motion for summary judgment. (Docs. 19-20). On March 27, 2015, the Plaintiff responded (Doc. 25) and the Defendants replied on April 3, 2015. (Doc. 26). The matter is now ripe for consideration.

**II.   Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (Dec. 2010).  Amended Rule 56(c) governs Procedures, and provides as follows:

---

[1] Brandon Culpepper's name is spelled "Branden" in some places in the record. As the matter is styled as an action against "Brandon Culpepper," the Court uses this spelling.

> ***(1) Supporting Factual Positions.*** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> ***(2) Objection That a Fact Is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> ***(3) Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.
>
> ***(4) Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c). Defendants, as the parties seeking summary judgment, bear the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in

his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-999 (11th Cir. 1992) (internal citations and quotations omitted).

### III.  Factual Background[2]

This case concerns Plaintiff Michael Gordon ("Gordon") and the events surrounding his 2013 arrest for driving under the influence ("DUI") in Selma, Alabama. In the early morning hours of December 23, 2013, Gordon and his uncle, William Gordon ("William") travelled to the Woodrow East apartment complex on Fox Hollow Avenue in Selma, Alabama in a truck ("the truck"). Gordon and Judy McCreary ("McCreary") had recently ended a romantic relationship and the purpose of the trip was to retrieve a 2010 Ford Fusion ("the Fusion") they shared, which was located at the apartment complex. With William at the wheel, he and Gordon travelled to the complex together in the truck. Gordon had consumed alcoholic beverages prior to their trip to Woodrow East. (Doc.19-1 at 2; Dep. Gordon at 21-24).

Gordon and William arrived at the apartment complex and William parked the truck some distance from where the Fusion was parked. Thereafter, Gordon remained with the truck and William walked to the Fusion. William got into the Fusion and began driving to exit the complex with it. The operation of the truck after the pair arrived is in dispute.

At the time of these events, former Selma Police Officer Brandon Culpepper resided at the Woodrow East apartments. While on duty, he stopped by his apartment to pick up something to eat. McCreary was his neighbor's mother. (Doc. 19-2 at 7; Dep. Culpepper at 14). At some point McCreary knocked on Culpepper's door in order to obtain his assistance with regaining

---

[2] At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. *Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 998-999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *Priester v.. City of Riviera Beach*, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

3

possession of the Fusion. Culpepper returned to his patrol vehicle and initiated a stop when he saw William leaving the complex in the Fusion.

Beyond this point, the facts of this case are in dispute. With specific respect to the resolution of a motion for summary judgment based on qualified immunity and Section 1983 – as is the case here -- the Eleventh Circuit has declared:

> …. we approach the facts from the plaintiff's perspective … "[t]he issues appealed here concern … whether or not certain given facts showed a violation of clearly established law." …. the "facts, as accepted at the summary judgment … may not be the actual facts[]" …. for summary judgment purposes, our analysis must begin with a description of the facts in the light most favorable to the plaintiff ….

*McCullough v. Antolini*, 559 F.3d 1201, 1202 (11th Cir. 2009). "At this juncture, we outline the [plaintiff's] version of the events." *Hawkins v. Carmean, 562 Fed. Appx. 740 (11th Cir. 2014)*. Gordon's version follows.

When Gordon and William arrived at the Woodrow East apartments, "William parked the truck alongside an entrance road within that area near the parked Fusion. [Gordon] stood outside next to the truck while William walked to get the Fusion." (Doc. 25-1 at 2). According to Gordon, he had called his nephew, Kourtney Gordon, and asked him to pick up the truck from the apartment complex. (Docs. 25-1 and 25-3). "Officer Culpepper stopped William as he was leaving and just before he approached where [Gordon] was standing beside the truck. [Gordon] walked the distance to where Officer Culpepper had stopped the Fusion." (Doc. 25-1 at 1-2; Aff. Gordon at 1-2). After a conversation between Culpepper and Gordon, Culpepper told Gordon to return the Fusion to McCreary. (Id. at 2). "Officer Culpepper told [Gordon] that if he did not return the car to [McCreary], he would arrest [Gordon] for DUI." (Id.). Gordon was arrested for DUI and taken to the city jail. (Id.). Culpepper was the arresting officer and he transported Gordon to the jail in his patrol vehicle. (Doc. 19-2 at 6; Dep. Culpepper at 24).

Gordon admits that he was under the influence of alcohol on the evening of December 23, 2013. (Doc. 19-1 at 2; Dep. Gordon at 21-24). Prior to his arrest, Gordon participated in a field sobriety test. The results of a breath test revealed that his blood alcohol level was 0.14 g/120 L. (Doc. 19-1 at 2; Dep. Gordon at 23; Doc. 19-4). However, Gordon states that he "did not drive to, within or from the residential area that evening" and "was not driving during that evening." (Doc. 25-1 at 1-2; Aff. Gordon at 1-2).

Following his arrest, Gordon remained in jail for several hours before he was able to post bond. The Alabama Uniform Traffic Ticket and Complaint completed by Culpepper states that Gordon "[d]id unlawfully operate a motor vehicle or other vehicle at or near FAWN ST. within the city limits of SELMA at or near WOODROW E AVE. in violation of Municipal Ordinance Number 17-1 duly adopted and in force at the time the offense was committed adopting 32-5A-191(A)2." (Doc. 25-1 at 2; Aff. Gordon 2).

Following Gordon's arrest and subsequent release from jail, Gordon appeared at a proceeding before the Selma Municipal Court on April 3, 2014. (Doc. 25-6 at 8). Officer Culpepper was not present. No plea was entered, Gordon's charges were dismissed, and he was required to pay court costs. (Id. at 10).

## IV.   Analysis

### A.   Gordon's § 1983 Claims

Gordon asserts three claims under § 1983 against Culpepper in his individual capacity: Count 1 excessive force/unlawful arrest, Count 2 false arrest/false imprisonment, and Count 3 malicious prosecution.[3] Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

---

[3] The styling of the complaint (Doc. 1 at 1) indicates that Officer Culpepper has been sued in his individual capacity.

> jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983. In order "[t]o sustain a cause of action based on section 1983, [a plaintiff] must establish two elements: (1) that [he] suffered a deprivation of rights, privileges or immunities secured by the Constitution and laws of the United States, and (2) that the act or omission causing the deprivation was committed by a person acting under color of law." *Wideman v. Shallowford Community Hosp., Inc.,* 826 F.2d 1030, 1032 (11th Cir.1987) (internal quotations and citation omitted). Here, there is no question that Officer Culpepper was acting under color of state law at the time of his actions. He was on duty as a Selma Police Officer and engaged in policing during the events of December 23, 2013. (Doc. 20 at 14-16).

Gordon also asserts four state law claims including false arrest/false imprisonment, assault and battery, negligence, and malicious prosecution against Culpepper and one state claim for neglectfulness, unskillfulness, and carelessness against the City of Selma. As an initial matter, the Court examines whether Gordon's § 1983 claims are permitted to proceed before moving to the state law claims. The Defendants have asserted immunity on all claims.

### 1. Count 1: § 1983 Excessive Force (Officer Culpepper)

As pointed out by both parties, Gordon's excessive force claim is subsumed by his false arrest claim. "Under this Circuit's law ... a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." *Bashir v. Rockdale County, Georgia*, 445 F. 3d 1323, 1331-32 (11th Cir. 2006) (quoting *Jackson v. Sauls, 206 F.3d 1156, 1171 (11th Cir. 2000)*). "[The Eleventh Circuit] reiterate[s], where an excessive force claim is predicated solely on allegations the arresting officer lacked the

6

power to make an arrest, the excessive force claim is entirely derivative of, and is subsumed within, the unlawful arrest claim." *Id*. (internal citations omitted). Notably, Gordon's response to the Defendants' motion for summary judgment states, "Plaintiff does not oppose Defendants' Motion for Summary Judgment as to Plaintiff's Section 1983 claim of excessive force." (Doc. 25 at 15). Accordingly, the Defendants' motion for summary judgment as to Count One is **GRANTED**.

### 2. Count 2: § 1983 False Arrest/False Imprisonment (Officer Culpepper)

Count 2 alleges that Gordon was subject to both false arrest and false imprisonment. "A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim." *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004)(citing *Marx v. Gumbinner,* 905 F.2d 1503, 1505 (11th Cir.1990)). "Probable cause exists where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe an offense has been or is being committed." *United States v. Jimenez, 780 F.2d 975, 978 (11th Cir. 1986)* (internal quotation marks and citations omitted).

Defendants argue that Officer Culpepper is entitled to qualified immunity for Gordon's claim of false arrest/false imprisonment. "While an officer who arrests an individual without probable cause violates the Fourth Amendment, this does not inevitably remove the shield of qualified immunity." *Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1137 (11th Cir. 2007)*. An officer is not automatically liable for making an arrest that, when seen with the benefit of hindsight, turns out not to have been supported by probable cause. As the Supreme Court observed in *Anderson v. Creighton*, "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated

that in such cases those officials ... should not be held personally liable." 483 U.S. 635, 641 (1987). Thus, even if it is determined that Officer Culpepper did not in fact have probable cause, the standard to be applied is that of "[a]rguable probable cause," that is, whether "reasonable officers in the same circumstances and possessing the same knowledge as [Officer Culpepper] could have believed that probable cause existed to arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (internal quotations and citations omitted). This standard recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who unreasonably conclude that probable cause exists. *Id.* The plaintiff bears the burden to "demonstrate that no reasonable officer could have found probable cause under the totality of the circumstances." *Id.* Consequently, "even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Holmes v. Kucynda, 321 F.3d 1069, 1079 (11th Cir. 2003)* (internal quotations marks and citations omitted).

     Whether an officer possesses arguable probable cause depends on the elements of the alleged crime and the operative fact pattern. *Skop, 485 F.3d at 1137-38.* Arguable probable cause does not, however, require an arresting officer to prove every element of a crime before making an arrest, because such a requirement "would negate the concept of probable cause and transform arresting officers into prosecutors." *Scarbrough v. Myles, 245 F.3d 1299, 1303 (11th Cir. 2001).* Thus, the inquiry is "whether [the defendant] violated clearly established law in making the arrests based on the objective factors that gave rise to his probable-cause determination and not whether the arrestees' actions actually constituted a crime." *Id. at 1303 n. 8.*

     Alabama Code § 32-5A-191, the DUI statute Gordon was arrested for violating states:

     (a) A person shall not drive or be in actual physical control of any vehicle while:

> (1) There is 0.08 percent or more by weight of alcohol in his or her blood;
>
> (2) Under the influence of alcohol;
>
> (3) Under the influence of a controlled substance to a degree which renders him or her incapable of safely driving;
>
> (4) Under the combined influence of alcohol and a controlled substance to a degree which renders him or her incapable of safely driving; or
>
> (5) Under the influence of any substance which impairs the mental or physical faculties of such person to a degree which renders him or her incapable of safely driving.

The Alabama Supreme Court has held "the test to be used in DUI cases is to look at all of the surrounding circumstances to see if there is sufficient evidence to support the conclusion that the defendant was in 'actual physical control' of the vehicle." *Cagle v. City of Gadsden*, 495 So. 2d 1144, 1147 (Ala. 1986).

Here, Gordon claims that he was not operating a vehicle and had not operated a vehicle at any point during the events in question. In his deposition, Gordon explained,

> We get there and I told – Like I said, I called Kourtney and told him where the truck would be. And my uncle and I went over there, and I gave my uncle the key to the car. And I was standing there on the street waiting for my uncle to come and pick me up, and it took him a long time to get there. And I was wondering what was taking him so long. So as I was beginning to walk back up the street to see, that's when I saw the police light come on to pull the car over and – the lights. I saw the lights…So I walked back up the street to see what was going on, to see was that the reason why it was taking my uncle so long to get there and I saw that the Fusion was pulled over. So I walked up to see what was going on, and so that's when I walked up and seen Officer Culpepper.

(Doc. 19-1 at 4; Dep. Gordon at 37-38).

On the other hand, Officer Culpepper states that he observed the truck in motion, observed Gordon exiting the truck, and that Gordon admitted that he had been driving. (Doc. 19-2 at 4-5 Dep. Culpepper at 17-21). Gordon specifically disputes that he had been driving the truck or that he admitted that he had been driving the truck. (Doc. 25 at 1-2).

9

However, even accepting Gordon's version, including that he was not actually driving the truck, based on the totality of the circumstances Officer Culpepper possessed arguable probable cause to arrest Gordon for DUI. The undisputed facts known to Officer Culpepper at the time of the arrest follow. Around 3 a.m., Gordon and William arrived together at the apartment complex in the truck. William went to retrieve the Fusion while Gordon stayed at the truck. Officer Culpepper stated, and Gordon does not dispute, that he saw Gordon approach from the direction of the truck. (Doc, 19-2 at 4; Dep. Culpepper at 19-20).  Culpepper observed, and later confirmed, that Gordon was under the influence of alcohol.  Also, there is no dispute that throughout Culpepper's encounter with Gordon, nobody arrived to take possession of the truck. Under these facts, the Court concludes that Officer Culpepper had arguable probable cause to arrest Gordon for DUI because, based on the undisputed facts known to him at the time, he "could have believed that probable cause existed to arrest" Gordon. *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (internal quotations and citations omitted).

Moreover, Gordon has also failed to present any evidence that the officer knew he was wrong in concluding that Gordon had been driving the truck.  Culpepper's statement of "I understand" in response to the Gordon's denial of driving, is not evidence that Culpepper did not believe that Gordon had been driving the truck or at least was in actual control of the truck. Also, Gordon's totally unsupported accusation[4] that Culpepper had a grudge against him is also insufficient to deprive Culpepper of immunity. Gordon must present some evidence that Officer Culpepper did not make a good faith mistake of fact in determining that Gordon had been driving

---

[4] Gordon has submitted the sworn statement of his criminal defense attorney, P. Vaughan Russell, Sr.. Mr. Vaughan stated "[m]y client was arrested for DUI with no evidence whatsoever against him. The officer involved had a personal vendetta against my client for no reason. He was a personal friend of my client's former girlfriend and was angry about their breakup." (Doc. 25-4 at 1).  There has been no showing that the attorney has any personal knowledge of the situation. Thus, the statement is hearsay and would not be admissible even if the attorney appeared in person at trial.

the truck. "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Groh v. Ramirez,* 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting) (quoting *Butz v. Economou,* 438 U.S. 478, 507 (1978), for the proposition qualified immunity covers 'mere mistakes in judgment, whether the mistake is one of fact or one of law'). *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Accordingly, the Defendants' motion for summary judgment as to Count 2 on both the false imprisonment[5] and false arrest claims is **GRANTED.**

### 3. Count 3: § 1983 Malicious Prosecution (Officer Culpepper)

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (plurality opinion)(quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979). As a result, the statute technically does not provide a cause of action for malicious prosecution under federal law. Rather, the Fourth Amendment can, in some cases, provide a plaintiff with a claim analogous to one for malicious prosecution. Typically this happens "where the plaintiff, as part of the commencement of a criminal proceeding, has been unlawfully and forcibly restrained." *Whiting v. Traylor,* 85 F.3d 581, 584 (11th Cir. 1996). That is to say, "[w]hen a § 1983 plaintiff is unlawfully seized, and that seizure follows and derives from a criminal prosecution itself, the Fourth Amendment violation for which the plaintiff seeks redress 'is of the kind making a

---

[5] Gordon also brought a claim for false imprisonment. "A detention on the basis of a false arrest presents a viable section 1983 action." *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996). A false imprisonment claim under section 1983 is based on the protection of the Fourteenth Amendment against deprivations of liberty without due process of law. *Baker v. McCollan,* 443 U.S. 137, 142 (1979). "Where a police officer lacks probable cause to make an arrest, the arrestee has a claim under section 1983 for false imprisonment based on a detention pursuant to that arrest." *Ortega* at 1526. Because Officer Culpepper had arguable probable cause for Gordon's arrest, he is also entitled to immunity on this claim.

section 1983 claim based on the violation analogous to the tort of malicious prosecution.' " *Eloy v. Guillot,* 289 Fed.Appx. 339, 345 (11th Cir. 2008) (quoting *Whiting,* 85 F.3d at 585-86).

To prevail on this type of claim, the plaintiff must prove (1) the elements of the common law tort of malicious prosecution, (2) an unlawful seizure in violation of the Fourth Amendment, and (3) that the unlawful seizure related to the prosecution. *Kingsland v. City of Miami,* 382 F.3d 1220, 1234-35 (11th Cir. 2004). For the unlawful seizure to relate to the prosecution, the deprivation of liberty suffered by the plaintiff must occur after his arraignment; "the plaintiff's arrest cannot serve as the predicate deprivation of liberty." *Id.* at 1235 (citing *Mejia v. City of New York,* 119 F.Supp.2d 232, 254 (E.D.N.Y. 2000)). Gordon fails to point to any deprivation of liberty, other than his arrest, as the basis for his malicious prosecution claim. "Even assuming he could meet the first two elements of a malicious prosecution-like Fourth Amendment claim, his failure to produce evidence on the third element dooms his chances for success." *Exford v. City of Montgomery*, 887 F. Supp. 2d 1210, 1226 (M.D. Ala. 2012). Further, "Plaintiff does not oppose Defendants' Motion for Summary Judgment as to Plaintiff's Section 1983 claim of malicious prosecution." (Doc. 25 at 15). Accordingly, Defendants' motion for summary judgment as to Count 3 is **GRANTED**.

  **B.**  **Gordon's State Law Claims**[6]

    **1.**  **Count 4: False Arrest and False Imprisonment (Officer Culpepper)**

Gordon's claim of false arrest requires proof "that the defendant caused him to be arrested without probable cause." *Higgins v. Wal–Mart Stores, Inc., 512 So.2d 766 (Ala. 1987) overruled on other grounds, Drill Parts & Serv. Co. v. Joy Mfg. Co., 619 So.2d 1280 (Ala. 1993)*). For purposes of false arrest, the Alabama Supreme Court has stated: "Thus, for a detention to be valid, the officer must reasonably, and in good faith, suspect the individual

---

[6] Pursuant to 28 U.S.C. § 1367, the Court has jurisdiction to consider these claims.

detained of being involved in some form of criminality." *Walker v. City of Huntsville*, 62 So. 3d 474, 493 (Ala. 2010) (internal quotations and citations omitted). "Reasonable ground for belief of guilt, or probable cause, exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id*. (internal quotations and citations omitted). In *Borders v. City of Huntsville*, the Alabama Supreme Court adopted the concept of arguable probable cause in cases, such as this one, in which a police officer claims discretionary-function immunity after making a warrantless arrest. 875 So. 2d 1168 (Ala. 2003). The Eleventh Circuit has held:

> In addressing discretionary-function immunity and qualified immunity, our court has stated that "[u]nder both Alabama law and federal law, the core issue is whether a defendant violated clearly established law." *Sheth v. Webster,* 145 F.3d 1231, 1239 (11th Cir.1998) (per curiam); *see Taylor v. Adams,* 221 F.3d 1254, 1260 n. 9 (11th Cir.2000) ("Discretionary-function immunity arising under Alabama law is, like qualified immunity arising under federal law, immunity from suit."), *cert. denied,* 531 U.S. 1077, 121 S.Ct. 774, 148 L.Ed.2d 673 (2001). Under discretionary-function-immunity analysis, a court first determines whether the government defendant was performing a discretionary function when the alleged wrong occurred; if so, "the burden shifts to the plaintiff to demonstrate that the defendant[ ] acted in bad faith, with malice or willfulness in order to deny [him] immunity." *Sheth,* 145 F.3d at 1239; *see Taylor,* 221 F.3d at 1261 ("The [government defendants] are entitled to discretionary-function immunity if, on the summary-judgment facts, their acts at the scene were discretionary and [the plaintiff] has not presented evidence sufficient to create a jury question regarding whether they 'acted in bad faith, [or] with malice or willfulness.' " (quoting *Sheth,* 145 F.3d at 1239) (third alteration in original)).

*Scarbrough v. Myles*, 245 F.3d 1299, 1303 (11th Cir. 2001). There is no dispute that Officer Culpepper was acting in his capacity as a law enforcement officer for the City of Selma when he arrested Gordon. Under Alabama law, the making of an arrest is a discretionary function. *Ex parte Cranman*, 792 So.2d 392 (Ala. 2000). The next step in the Court's inquiry is to determine whether Gordon has submitted evidence suggesting that Officer Culpepper's behavior fits within

13

an exception to discretionary immunity. Namely, whether Officer Culpepper acted in bad faith or with malice or willfulness. "The test for State-agent immunity… adopted by a majority of [the Alabama Supreme Court]…withholds immunity from State agents acting in their personal capacity, when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law. *Gary v. Crouch,* 867 So. 2d 310, 314 (Ala. 2003)(internal quotations and citations omitted).

Though Officer Culpepper may have been acting under a mistake of fact when he arrested Gordon by incorrectly concluding that Gordon had been operating or in actual physical control of the truck, his mistake of fact is of no consequence here for the purposes of discretionary function immunity under Alabama law. As the Court has explained above, Officer Culpepper possessed arguable probable cause to arrest Gordon.  And, more significantly, Gordon has presented no evidence from which a reasonable jury could find that Culpepper acted in bad faith. Thus, under Alabama law, he is entitled to discretionary-function immunity. *Borders*, 875 So. 2d at 1180-81. Consequently, the Defendants' motion for summary judgment as to Count 4 is **GRANTED**.

### 2. Count 5: Assault and Battery (Officer Culpepper)

Gordon alleges a state law claim for assault and battery against Officer Culpepper.  In Alabama, the elements of an assault and battery claim are:

> "'[A]n intentional, unlawful offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt if not prevented.'" …. A successful assault becomes a battery, which consists of the touching of another in a hostile manner.

*Wright v. Wright*, 654 So.2d 542, 544 (Ala. 1995). However, the Alabama Supreme Court has stated, "In making the arrest, a police officer may use reasonable force and may be held liable

only if more force is used than is necessary to effectuate the arrest." *Franklin v. City of Huntsville,* 670 So.2d 848, 852 (Ala.1995) (citing Ala. Code § 13A–3–27(a)) ("A peace officer is justified in using that degree of physical force which he reasonably believes to be necessary, upon a person in order: (1) To make an arrest for a misdemeanor, violation or violation of a criminal ordinance ... unless the peace officer knows that the arrest is unauthorized."). Gordon admits that the only force Officer Culpepper used was to put his hands into handcuffs. Gordon did not resist and Officer Culpepper did not have to force him into handcuffs. (Doc. 19-1 at 6; Dep. Gordon at 49). Additionally, in Gordon's response to the motion for summary judgment, he states, "Plaintiff does not oppose Defendants' Motion for Summary Judgment to the extent it requests dismissal of Plaintiff's common law claim of assault and battery." (Doc. 25 at 17). Accordingly, the Defendants' motion for summary judgment as to Count 5 is **GRANTED**.

### 3. Counts 6 and 7: Negligence (Officer Culpepper) and Neglectfulness, Unskillfulness, and Carelessness (City of Selma)

In Count 6, Gordon claims that Officer Culpepper "carried out his duties, [at the time of these events], in a neglectful, unskillful, and/or careless manner." (Doc. 1 at 11). In Count 7, Gordon claims that "[t]he City of Selma is liable to Plaintiff for the damages and injuries sustained as a result of Culpepper's neglectfulness, unskillfulness, and carelessness" pursuant to Ala. Code § 11-47-190. (Id. at 12-13). In its motion for summary judgment on all claims, the only argument pertaining to negligence that the Defendants raise is that Officer Culpepper is entitled to discretionary function immunity for his actions. Defendants state only:

> In this case, the arrest of Plaintiff is unquestionably the performance of a discretionary function triggering the immunity provisions of Ala. Code § 6-5-338. *Ex parte Cranman*, 792 So.2d 392, 405 (Ala.2000); *Swan v. City of Hueytown*, 920 So.2d 1075, 1079 (Ala.2005); *Ex parte Duvall*, 782 So.2d 244, 248 (Ala.2000). As such, Officer Culpepper is entitled to state-agent immunity from all claims of negligence arising out of Plaintiffs arrest, including false arrest/imprisonment, and negligence.

(Doc. 20 at 15). The only argument the City makes as to the claim against it is, "As Officer Culpepper is immune, the City of Selma is likewise entitled to immunity." (Doc. 20 at 16-17).

In his response, Gordon states: "Defendants have not moved for summary judgment upon Plaintiff's claims of negligence against Defendants Culpepper and the City of Selma, as such claims are represented within Counts Six and Seven of the Complaint, respectively. Accordingly, the entry of judgment as a matter of law is not due to be entered upon those claims." (Doc. 25 at 21).

The Court has determined that Officer Culpepper is entitled to immunity under Ala. Code § 6-5-338(a). "It is well established that, if a municipal peace officer is immune pursuant to § 6–5–338(a), then, pursuant to § 6–5–338(b), the city by which he is employed is also immune." *Howard v. City of Atmore*, 887 So. 2d 201, 211 (Ala. 2003). Accordingly, the Defendants' motion for summary judgment as to Counts 6 and 7 are **GRANTED**.

### 4. Count 8: Malicious Prosecution (Officer Culpepper)

Under Alabama law,

> In order for a claim of malicious prosecution to be submitted to a jury, the trial court must determine that the plaintiff has presented substantial evidence of the following elements: (1) that a prior judicial proceeding was instituted by the present defendant, (2) that in the prior proceeding the present defendant acted without probable cause and with malice, (3) that the prior proceeding ended in favor of the present plaintiff, and (4) that the present plaintiff was damaged as a result of the prior proceeding.

*Delchamps, Inc. v. Bryant*, 738 So. 2d 824, 831-32 (Ala. 1999).

Gordon satisfies the first element. Under Alabama law, malicious prosecution claims may be brought against the police officers. *See, e.g., Franklin v. City of Huntsville, 670 So.2d 848 (Ala.1995)* (denying motion to dismiss malicious prosecution claim against police officer). Gordon also satisfies the third and fourth elements. As to whether the prior proceeding ended in

favor of the present plaintiff, the Court has determined that under Alabama law, the dismissal of the DUI charge against Gordon coupled with his payment of court costs does amount to a favorable termination for the purposes of a malicious prosecution claim. In *Chatman v. Pizitz*, the Alabama Court of Civil Appeals held that a plea of guilty, followed by the *nol-prosse* of a charge, payment of court costs, and restitution was a termination in favor of the plaintiff that would support a claim for malicious prosecution. 429 So. 2d 969 (Ala. Civ. App. 1983). The Court notes that a *nolle prosequi* of a charge and a dismissal are distinguishable. However, based on the available precedent, the Court finds this situation analogous, especially considering that in *Chatman*, a guilty plea was entered, contrary to the instant case, where no plea of guilt was entered. Additionally, the payment of court costs and restitution did not alter the Alabama Court of Civil Appeals' determination. Finally, Gordon has claimed damages sufficient to satisfy the fourth element of this claim.

As for the second element, whether Officer Culpepper acted without probable cause and with malice, as explained above, Gordon fails to present any admissible evidence in support. The Alabama Supreme Court has held:

> [F]or a plaintiff's claim of malicious prosecution against a state agent to be submitted to the jury, where the state agent has moved for a judgment as a matter of law based on the defense of discretionary-function immunity, the plaintiff must have presented substantial evidence of malice in fact, or actual malice.

*Ex parte Tuscaloosa Cnty.,* 796 So. 2d 1100, 1107 (Ala. 2000)(emphasis added).[7] Because Gordon has failed to submit evidence sufficient to create a jury question, the Defendants' motion for summary judgment as to Count 8 is **GRANTED.**

---

[7] Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." *West v. Founders Life Assurance Co. of Florida,* 547 So.2d 870, 871 (Ala. 1989); *see also* § 12-21-12(d), Ala. Code 1975.

V.     **Conclusion**

For the reasons discussed herein, the Defendants' motion for summary judgment is **GRANTED** on all claims.

A Final Judgment consistent with the terms of this Order shall be entered by separate document as required by Rule 58 of the Federal Rules of Civil Procedure.

**DONE** and **ORDERED** this the **7**[th] day of **April 2015**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**
